# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

TAMMY L. FOWLER,
o/b/o  E.J.A.,                                      Plaintiff,

       v.                                              5:14-CV-1390
                                                     (MAD/ATB)
COMMISSIONER OF SOCIAL SECURITY,
                                                     Defendant.

_____

PETER L. WALTON, ESQ., for Plaintiff
SIXTINA FERNANDEZ, SPECIAL ASS'T. U.S. ATTORNEY for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff Tammy Fowler filed an application for Supplemental Security Income ("SSI") payments on behalf of her son, E.J.A.,[1] on March 29, 2007. (Administrative Transcript ("T.") at 127-33, 379).  Plaintiff's application was initially denied on June 18, 2007, and she made a timely request for a hearing before an Administrative Law Judge ("ALJ"). (T.60-66).  The hearing, at which plaintiff appeared with E.J.A., was conducted by ALJ Michael W. Devlin by video conference on September 29, 2009. (T. 31-58).

---

[1] Throughout this Report, the child on whose behalf this action was brought will be generally referred to as "the claimant" or by his initials  "E.J.A."  Tammy Fowler, who commenced this action on behalf of her son, will generally be referred to as "plaintiff."

In a decision dated January 8, 2010, ALJ Devlin found that E.J.A. was not disabled. (T. 10-30). The Appeals Council denied plaintiff's request for review on July 18, 2011. (T. 1-6). On September 14, 2011, plaintiff commenced an action challenging the decision in the Northern District of New York, Case No. 7:11-CV-1091 (LEK/RFT). (T. 470-73). Plaintiff and the Commissioner consented to a remand for additional administrative action, and such remand was approved by the Honorable Randolph Treece on June 14, 2012. (T. 503).

On September 5, 2012, the Appeals Council vacated the January 8, 2010 ALJ decision and remanded the case for a supplemental hearing and a redetermination of disability. (T. 379, 506-10). On April 11, 2013, ALJ F. Patrick Flanagan held a supplemental hearing at which plaintiff and E.J.A. appeared and testified. (T. 411-42). On April 25, 2013, ALJ Flanagan issued a decision finding that E.J.A. was not disabled from the date of his application through the date of ALJ Flanagan's decision. (T. 376-410). ALJ Flanagan's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on September 18, 2014.[2] (T. 367-69).

## II.   ISSUES IN CONTENTION

Plaintiff makes the following arguments:

(1)    The ALJ erred in his determination that claimant's impairments were not functionally equivalent to "the listings." (Pl.'s Br. at 13-22) (Dkt. No. 7).

(2)    The ALJ's credibility findings regarding plaintiff and claimant were not

---

[2] As this court is only reviewing the April 25, 2013 determination, all subsequent references to the "ALJ" refer solely to ALJ Flanagan.

supported by substantial evidence. (Pl.'s Br. at 22-24).

(3)    The ALJ failed to properly consider how claimant functioned outside of a structured or supportive setting. (Pl.'s Br. at 24-25).

Defendant argues that the Commissioner's decision is supported by substantial evidence, and the complaint should be dismissed. (Def.'s Br. at 5-17) (Dkt. No. 8). For the following reasons, this court agrees with defendant and will recommend dismissal of the complaint.

## III.    FACTUAL OVERVIEW

The court will only briefly summarize the medical, educational, and other evidence, which is set forth at length in plaintiff's brief (Pl.'s Br. at 1-13) and in the ALJ's decision. (T. 383-403).  Further relevant details are discussed below in the course of analyzing the issues disputed by the parties.

Claimant E.J.A. is a male child, born in December 1997. (T. 127, 382).  E.J.A. was nine years old on the date that his application for benefits was filed. (T. 127).  As of the date of the supplemental hearing, E.J.A. was fifteen years old and in the eighth grade.  (T. 415).  He lived with his mother, stepfather, and two sisters.  (T. 396).  At various times growing up, E.J.A. lived with an aunt, and then with his grandparents. (T. 286, 346).

E.J.A. first received speech therapy at age three due to speech delays and a stutter and received daily speech therapy when he began school. (T. 285, 305-07, 318). More recent evaluations showed significant improvement in his communication skills.

(T. 185, 322, 347, 580-81).   E.J.A. was held back in kindergarten, and at the date of the hearing was enrolled in special education classes for math, social studies, and English. (T. 418, 421, 426).  He also had several resource room sessions where he received assistance with his homework. (T. 418).  He took part in regular education classes for courses in art, health, music, physical education, and technology. (T. 426). Despite his history of academic difficulties, E.J.A.'s  recent report cards and progress reports indicate that he was doing better in school. (T. 426, 554-58, 573-74).

Since 2003, E.J.A. has been on medication to control his attention deficit hyperactivity disorder ("ADHD"). (T. 292-316).  E.J.A. was referred for psychiatric counseling in May 2008 after a diagnosis of disruptive behavior disorder that manifested in angry outbursts, irritability, and episodes of lying and stealing. (T. 343, 363-66).  This counseling ended on or about July 2008 when E.J.A. moved with his family to Nebraska for several months.  (T. 46, 439).  Since returning to New York, E.J.A. had been placed on a waiting list for counseling through his pediatrician, and had participated in an anger management counseling group through his school. (T. 16, 437, 439).

## IV.   APPLICABLE LAW

### A.   Disability Standard

An individual under the age of eighteen is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected

4

to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). *See Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *3-4 (N.D.N.Y. Apr. 30, 2009) (discussing the standard for children's disability benefits). However, the definition provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

The agency has developed a three-step process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then by statute and by regulation, the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examination of whether he or she suffers from one or more medically determinable impairments that, either alone or in combination, are properly regarded as "severe," in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If the child is found to have a severe impairment, the Commissioner must then determine, at the third step, whether the impairment meets or equals a presumptively disabling

condition identified in the listing of impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1. *Id*. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed impairment, and the twelve-month durational requirement is satisfied, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

"Functional" equivalence must be examined only if it is determined that the claimant's impairment does not meet or medically equal the criteria for a listed impairment. Analysis of functionality involves considering how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established by finding an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

6

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this

standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## V.    THE ALJ'S DECISION

As the first step in his analysis, the ALJ found that E.J.A. had not engaged in substantial gainful activity since March 29, 2007, the filing date of the application for benefits. (T. 383).  Next, the ALJ determined that plaintiff's ADHD, history of nocturnal enuresis, disruptive behavior disorder versus oppositional defiant disorder, adjustment disorder, learning disorder, and history of speech and language delays" constituted severe impairments.  (*Id.*).  The ALJ also considered E.J.A's history of seasonal allergies and allergic rhinitis but concluded that these impairments were non-severe, in light of the available test results and the lack of any documented functional limitations associated with these impairments. (*Id.*).

At the third step, the ALJ found that E.J.A. did not have an impairment or a combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. (T. 383-84).  The ALJ continued his analysis and found that E.J.A.'s severe impairments, did not functionally equal the severity of a Listed Impairment under the Regulations. (T. 385-403).  As required by the regulations, the ALJ assessed E.J.A.'s impairments as a school age child (age 6-12) and as an adolescent (age 12 to attainment of age 18).

In making his functional equivalence determination, the ALJ considered the medical evidence, E.J.A.'s school records, and the hearing testimony. (*Id.*).   Based upon his review of the evidence, the ALJ found that E.J.A. had "no more than marked limitation" in the functional domain of acquiring and using information. (T. 389-92).

9

The ALJ cited E.J.A.'s intelligence evaluation scores, standardized achievement test results, and the special education services, resource room, and speech therapy mandated by his Individual Education Plan ("IEP") as supporting this finding. (T. 390). The ALJ also considered the opinions of the state agency consultant, two consultative examiners, and several of E.J.A.'s teachers, assigning varying weight to each depending on the consistency with the overall record. (T. 390-92).

The ALJ further concluded that E.J.A. had a "less than marked" limitation in the functional domains of attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being. (T. 392-397, 399-403). He had no limitation in the functional domain of moving about and manipulating objects. (T. 397-98). The ALJ also evaluated plaintiff's and E.J.A.'s hearing testimony, and concluded that their statements regarding the intensity, persistence, and limiting effects of E.J.A.'s symptoms were not entirely credible due to inconsistencies with the school records and the objective medical evidence provided by treating and examining sources. (T. 386). Because E.J.A. did not have "marked" limitations in two or more of the functional domains, nor did he have an "extreme" limitation in any one domain, the ALJ concluded that E.J.A. was not disabled from the date of his application for benefits. (T. 404).

## VI.   ANALYSIS

### A.   Functional Domains

As discussed above, if the claimant's condition does not meet or medically

equal a specifically listed impairment, the ALJ must determine whether claimant has an impairment or combination of impairments that functionally equals a listing. The functional equivalence determination is based upon an analysis of the six domains listed above. 20 C.F.R. § 416.926a(b)(1). Marked limitations in more than one domain would functionally equal the listings and require a finding that the claimant is disabled. 20 C.F.R. § 416.926a(d).

Plaintiff argues that the ALJ's determination of functional equivalence is not supported by substantial evidence due to an improper evaluation of E.J.A.'s limitations in the domains of attending and completing tasks, interacting and relating with others, and caring for himself. (Pl.'s Br. at 15-22). Because the ALJ found that E.J.A. had a marked limitation in the area of acquiring and using information, an additional marked limitation in any of these other three domains would render his condition "functionally equivalent" to the listings, and E.J.A. would qualify as disabled.

### 1. Attending and Completing Tasks

In this domain, the Commissioner considers the child's ability "to focus and maintain . . . attention," and how well he can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). The regulations provide that a school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom

and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work, beyond what would be expected in other children of like age who do not have impairments. The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task - *e.g.*, to be ready for the school bus, change clothes after gym, and change classrooms - without extra reminders and accommodation. 20 C.F.R. § 416.926a(h)(2)(iv).

An adolescent should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects. He should also be able to organize his materials and plan his time in order to complete school tasks and assignments. In anticipation of entering the workplace, the adolescent should be able to maintain attention on a task for extended periods of time, and not be unduly distracted by his peers or unduly distracting to others in a school or work setting. 20 C.F.R. § 416.926a(h)(2)(v).

The applicable regulations provide examples of limited functioning with respect to attending and completing tasks, including when a child (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest–*e.g.*, games or art projects; (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is

easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a (h)(3).

The ALJ noted that the record revealed that C.R. had some difficulties completing some age-appropriate tasks in a timely manner, but concluded that these problems did not rise to the level of marked limitation in attending and completing tasks. (T. 392-95). For example, school records showed that E.J.A. regularly had problems participating in class, completing homework and projects as assigned, staying on task, and keeping up with other students. (T. 393, 555-58, 562-75). However, the most recent progress notes from his teachers[3] reported that E.J.A. was attentive in class, was organized and on time, and was making improvements staying on task and participating during class. (T. 570-72, 575). E.J.A.'s pediatrician successfully monitored and adjusted his ADHD medication to improve results and reduce side-effects. (T. 627, 632). E.J.A. also participated on the school wrestling team, and reported that he hoped to continue doing so when he transitioned to high school. (T. 416).

The ALJ reviewed the consultative examiners' reports, finding that E.J.A. was able to complete all required subtests for formal intellectual testing. (T. 394). Dr. Jeannine Shapiro, who examined claimant in June 2007, and Dr. Dennis Noia, who

---

[3] The opinion of teachers and other non-medical sources are not entitled to controlling weight, but can be used as a valuable source of evidence in assessing the severity of an impairment and any resulting functional limitations. *Reid v. Astrue*, No. 07-CV-577 (LEK), 2010 WL 2594611 at *5, n.4 (N.D.N.Y. June 23, 2010).

examined him in November 2012, both found that E.J.A. exhibited adequate attention and concentration. (T. 322, 616). Both reports were consistent with the opinion of state agency consultant Dr. J. Randall. (T. 394). E.J.A.'s treating mental health care providers similarly observed intact memory, concentration and attention. (T. 347, 366). E.J.A also testified during the supplemental hearing, and the ALJ did not observe any issues with his ability to pay attention and answer questions. (T. 394).

Plaintiff contends that the ALJ failed to assign adequate weight to more restrictive teacher opinions. For example, E.J.A.'s third grade teacher opined that claimant had very serious problems (indicative of extreme limitations) in several areas: focusing long enough to finish assigned tasks; working without distracting himself or others; and working at reasonable pace/finishing on time on an hourly basis. The same teacher reported that E.J.A. had serious problems (indicative of marked limitations) in other areas: refocusing to task when necessary; carrying out multi-step instructions; and completing work accurately without careless mistakes. (T. 183). This teacher also commented that E.J.A. received a lot of extra help, and could barely complete any tasks independently. (*Id.*). Similarly, E.J.A.'s fourth grade teacher noted serious problems in: carrying out multi-step instructions; completing work accurately without careless mistakes; and working at reasonable pace/finishing on time." (T. 278). This teacher commented that E.J.A. needed reminders two to three times per hour in order to attend to tasks. (*Id.*).

The ALJ did consider both of these teacher evaluations, but assigned them little weight because they were based upon limited evaluation periods and were not

supported by the record. (T. 394). E.J.A.'s third and fourth grade teachers had known

him for only one or two months at the time of their evaluations. (T. 181, 276). In

contrast, E.J.A.'s second grade teacher had known him for nine months when she

submitted her evaluation. (T. 157). This teacher reported that E.J.A. had an obvious

problem carrying out multi-step instructions, working at a reasonable pace, and

finishing on time, but that these issues generally occurred on a weekly basis. When

E.J.A. exhibited a lack of focus, the teacher noted that "he acts as though he did not

receive his medicine." (T. 159). Otherwise, his second grade teacher observed no

more than a slight problem in this domain, and no limitations that occurred on a daily

or hourly basis. (*Id.)*. These more restrictive teacher observations were also

inconsistent with E.J.A.'s most recent report card, which showed academic

improvement (T. 574).

Plaintiff alleges other inconsistencies in the ALJ's determination. For example,

the ALJ noted that E.J.A. played video games and enjoyed puzzles - activities that

require sustaining attention, concentration, and memory. (T. 394). Plaintiff points to

her testimony at the September 2009 hearing that E.J.A. could only focus on a

television show or a video game for a maximum of ten to fifteen minutes, and then

would move on to something else. (T. 44). Plaintiff also testified she would need to

remind E.J.A repeatedly to finish chores, such as taking out the garbage, and that he

would often start and stop a task after being distracted. (T. 43-44). However, at the

supplemental hearing, plaintiff testified that E.J.A. had shown improvement in this

domain. While E.J.A. would still get distracted during a television show or meal time,

he could stay focused on a video game. (T. 429). Plaintiff also testified that E.J.A. would often work on a puzzle in his room when he was frustrated or had a fight with his sisters. (T. 432). E.J.A.'s own testimony at the supplemental hearing showed similar improvements in this domain, with the assistance of medicine and his teachers: he described trying to get his homework done at school during resource sessions; getting assistance from his teachers when he got off task; and that he felt more "hyper" when he had forgotten to take his medicine. (T. 418, 422).

As discussed above, the ALJ is not required to explicitly set forth and analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur*, 722 F.2d at 1040. Even with the inconsistencies pointed out by plaintiff, the ALJ properly considered the relevant medical evidence, school records and testimony and marshaled substantial evidence supporting his conclusion that E.J.A.'s limitations were less than marked with respect to the domain of attending and completing tasks. *See, e.g., Hudson v. Astrue*, 1:06-CV-1342 (LEK/VEB), 2009 WL 1212114, at *8-9 (N.D.N.Y. April 30, 2009) (upholding the ALJ's finding that claimant's limitations in attending and completing tasks were less than marked, despite observations about some "serious" problems in related areas by teachers, because the ALJ's conclusion was supported by substantial evidence, including medical opinion that claimant's attention span was "fine" while on medication); *Torres v. Commissioner of Social Sec.*, 09 CV 0059(RJD), 2010 WL 2674543, at *7 (E.D.N.Y. June 30, 2010) (while the record indicates the child claimant had some difficulty following instructions and dealing with frustration, educational records indicated these issues could be addressed

through constant reinforcement and guidance, and were less than marked); *Gomes v. Astrue*, 633 F. Supp. 2d 171, 185-86 (S.D.N.Y. 2009) (affirming finding that claimant diagnosed with ADHD and speech/language delays had less than marked limitations with respect to attending and completing tasks, where, *inter alia*, claimant responded well to re-direction).

In the light of the foregoing, this court finds that the ALJ's determination that E.J.A. suffered from a less than marked impairment in the domain of attending and completing tasks was supported by substantial evidence.

### 2. Interacting and Relating With Others

In this domain, the Commissioner considers the child's ability to "initiate and sustain emotional connections with others, develop and use the language of [her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The regulations provide that a school-age child is expected to develop lasting friendships with children her age, begin to understand how to work in groups to create projects and solve problems, and have an increasing ability to understand another's point of view and to tolerate differences. A school-age child "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

An adolescent should be able to initiate and develop friendships with children his age and relate appropriately to other children and adults, both individually and in

groups. He should begin to be able to solve conflicts between himself, peers, family members or adults outside the family, and should recognize that there are different rules for friends, acquaintances and adults. An adolescent should be able to intelligibly express his feelings, ask for assistance in getting his needs met, seek information, describe events, and tell stories, in all kinds of environments, and with all types of people. 20 C.F.R. 416.926a(i)(2)(v).

The regulations provide examples of limited functioning with respect to this domain. A child might have limited functioning if she does not reach out to be picked up and held by a care giver; has no close friends; avoids or withdraws from people that she knows, or is overly anxious or fearful of meeting new people or trying new experiences; has difficulty playing games or sports with rules; has difficulty communicating with others or in asking others for assistance; or has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

The ALJ considered plaintiff and claimant's testimony that E.J.A. had very serious difficulty interacting with his peers and adults, demonstrated behavior problems, had anger episodes, and was bullied by other children. (T. 396). E.J.A. was assessed at Mercy Center for Behavioral Health and Wellness ("Mercy") in May 2008, where he briefly received psychiatric counseling. (T. 348-54, 439). At the time of the hearing, he had also begun anger management counseling at school. (T. 439). However, the ALJ concluded that E.J.A.'s problems interacting with others appeared to occur in limited circumstances, and that E.J.A. had a less than marked limitation in this domain. (T. 396). There is substantial evidence to support this conclusion.

For example, while E.J.A. had verbal fights with his mother and step-father, and would engage in physical fights with his sisters, the ALJ found that claimant demonstrated an adequate manner of relating, social skills, and overall presentation in other settings. (T. 396).  For example, consultative examiner Dr. Shapiro reported in June 2007 that E.J.A. had a cooperative and responsive demeanor, and that his manner of relating, social skills, and overall presentation was age appropriate. (T. 321).  Dr. Noia conducted another consultative exam in November 2012 and reported that E.J.A. was cooperative, and that his manner of relating, social skills, and overall presentation were "moderately adequate." (T. 615).  The ALJ also cited notes from E.J.A.'s treating sources showing that he was cooperative, pleasant, and maintained good eye contact during sessions. (T. 347, 356, 366).

E.J.A.'s school records did not document any significant behavioral issues at school, such as frequent detentions or out of school suspensions for fighting or bad behavior, and his IEP did not include a behavioral program. (T. 189-202, 396, 555-58).  School reports described him as well-behaved, polite, cooperative, and "a pleasure to have in class."  (T. 192, 396, 563, 584).  E.J.A.'s eighth grade teacher reported no problems interacting and relating with others, and that E.J.A. had many friends that "he likes to hang out with at school." (T. 584).

While the record reflected verbal conflicts with his mother and stepfather and fights with his sisters, plaintiff reported in 2007 that E.J.A. had friends his own age, could make new friends, and generally got along with his parents, teachers and other adults. (T. 140).  During the supplemental hearing, E.J.A. admitted that he argued with

his mother when told to do something that he didn't want to do, and that he fought with his sisters, but also testified that he socialized with other children at school, participated on the school wrestling team, and spent time with his uncle, who was a grade above him in school. (T. 397, 417). E.J.A. testified that other students had bullied him at school and on the bus, but that these problems stopped after his uncle and sister intervened. (T. 421).

While E.J.A. had difficulty with speech as a younger child, the records relied upon by the ALJ demonstrated that these problems significantly improved with speech therapy. (T. 191-92, 317-19). A March 2007 Speech and Language Evaluation found that E.J.A.'s language skills appeared adequate for everyday interactions with an interested adult, and that his speech was rated as ninety percent intelligible during a one-on-one interaction. (T. 319). A 2009 evaluation found that E.J.A.'s articulation skills were within normal limits. (T. 258). The ALJ did not observe any significant speech difficulties during E.J.A.'s supplemental hearing testimony. (T. 396).

As he had done previously, the ALJ assigned little weight to E.J.A.'s third and fourth grade teacher evaluations, due to their limited observation of claimant prior to completing the evaluation and their inconsistency with the other record evidence. (T. 397). Their opinions that plaintiff had difficulty expressing himself, participating in class discussions, and interpreting facial expressions, body language, hints, or sarcasm are not consistent with the other record evidence. (T. 184-85, 279). Plaintiff has placed great emphasis on these evaluations, but for the same reasons discussed above, the ALJ's discounting of these reports was supported by substantial evidence.

Plaintiff also relies on the opinion of Dr. Michael Camillo, who saw plaintiff on two visits between May 2008 and June 2008 at Mercy. (T. 348-354). In his initial assessment, Dr. Camillo noted that E.J.A. had poor insight and impulse control as well as a history of saying that he wanted to die and that he wanted to kill others. (T. 348). The ALJ assigned Dr. Camillo's opinion little weight, citing the limited treatment history with claimant, the lack of objective medical evidence in the opinion, and the lack of any other supporting evidence in the record for his findings. (T. 388). The ALJ concluded that Dr. Camillo's notes were drawn solely from plaintiff's comments during the evaluation, since the descriptions of homicidal and suicidal ideation were inconsistent with the physician's general assessment of plaintiff as cooperative, lucid, and attentive. (T. 349). The same initial assessment notes reflect that E.J.A. denied any homicidal or suicidal thoughts. (*Id.*).

Plaintiff contends that Dr. Camillo should have been considered a treating physician, and his opinion given controlling weight. (Pl.'s Br. at 20-21). This court disagrees. Even if Dr. Camillo were considered a treating physician, his opinion would not be entitled to controlling weight because it was inconsistent with other substantial evidence in the record, including the opinions of the state agency consultant and the two consulting examiners. *Mongeur*, 722 F.3d at 1039; *Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

In the light of the foregoing, this court finds that the ALJ's determination that E.J.A. suffered from a less than marked impairment in the domain of interacting and relating with others was supported by substantial evidence.

### 3. Caring for Oneself

In this domain, the Commissioner considers how well the child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways; how he copes with stress and changes in his environment, and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). The regulations provide that a school-age child should be independent in most day-to-day activities, such as dressing and bathing, although he may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he is competent in doing some activities and that he has difficulty with others, and should be able to identify those circumstances when he feels good about himself and when he feels bad. He should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. He should begin to demonstrate consistent control over his behavior, should be able to avoid behaviors that are unsafe, and should begin to imitate more of the behavior of adults that he knows. 20 C.F.R. § 416.926a(k)(2)(iv).

An adolescent should feel more independent from others and should be increasingly independent in all of his day-to-day activities. He may sometimes experience confusion in the way that he feels about himself. He should begin to notice

significant changes in his body's development, that may result in anxiety, worry, anger, or frustration. The adolescent should begin to discover appropriate ways to express his feelings, such as keeping a diary or listening to music. He should begin to think seriously about future plans, and what he will do when he finishes school. 20 C.F.R. § 416.926a(k)(2)(v).

The regulations provide examples of limited functioning in this domain. A child may have limited functioning if he continues to place non-nutritive or inedible objects in his mouth; often uses self-soothing activities showing development regression, such as thumb sucking, body rocking, or head banging; does not dress or bathe himself appropriately for his age; ignores safety rules or engages in self-injurious behavior such as a suicidal thoughts or actions, self-inflicted injury or refusal to take medication; does not spontaneously pursue enjoyable activities or interests; or has disturbances in eating or sleeping patterns.

While E.J.A. had problems correctly dressing himself and regularly bathing at the time of the first hearing, plaintiff testified at the supplemental hearing that these areas had improved, although his mother and stepfather still had to remind him to bathe or to dress appropriately. (T. 400, 434). E.J.A. was generally independent, and was able to walk or ride his skateboard by himself around the neighborhood, do chores around the house, and take care of his personal needs.

The ALJ concluded that E.J.A. had less than marked limitations in his ability to care for himself, citing the lack of objective medical evidence to support a more

restrictive limitation. (T. 399-400). For example, the record demonstrated E.J.A.'s ability to control his impairments with limited medication, and that he otherwise received limited mental health treatment. His mental health evaluations by treating providers were "generally unremarkable." (T. 266, 347). He had never had long-term or continuing treatment in a hospital, and had only recently returned to counseling. (T. 437, 439). During his 2007 consultative exam, Dr. Shapiro found that E.J.A. "appears to be able to be aware of dangers and take precautions in an age appropriate manner." (T. 323). Dr. Noia's conclusions after the 2012 consultative exam were similar, but slightly more guarded: "[E.J.A.] gave the impression that he is capable of responding appropriately to changes in the environment; learning at his level of cognitive functioning; and asking questions and requesting assistance at somewhat below an age appropriate manner. He appears to be able to be aware of dangers and take precautions at somewhat below an age appropriate manner." (T. 616).

Plaintiff cites to Dr. Camillo's report that E.J.A. had poor insight and impulse control, as well as suicidal and violent ideation. (T. 348). As addressed previously, these conclusions are not supported by any of the objective evidence or the consultative examinations in the record. Likewise, the evaluations from E.J.A.'s third and fourth grade teachers, that describe limitations in caring for his personal hygiene, handling frustration, and knowing when to ask for help, are inconsistent with both the consultative exams as well as the evaluations of E.J.A.'s second grade teacher, who had a longer relationship with claimant, and did not identify any problems in this domain. (T. 162).

In the light of the foregoing, this court finds that the ALJ's determination that E.J.A. suffered from a less than marked impairment in the domain of caring for himself was supported by substantial evidence.

## B.    Credibility Assessment

### 1.    Legal Standard

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to

function.  20 C.F.R. § 416.929(c).  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 416.929(c)(3).

When the claimant is a child, the ALJ is free to accept or reject the testimony of the child's parent. *Williams*, 859 F.2d at 260.  If the child is unable to adequately describe his symptoms, the ALJ will accept the description provided by the testimony of the person most familiar with the child's condition, such as a parent. *Hamedallah ex rel. E.B. v. Astrue*, No. 3:11-CV-939, 2012 WL 2403518, at *16 (N.D.N.Y. June 25, 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 (10th Cir. 2003)).  However, the regulations discussing "symptoms"  specifically state that "[y]our statements (or those of another person) alone, . . . are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 416.928(a).  The ALJ must make a specific findings regarding the parent's credibility as if the child were testifying himself. *Id.* *See also Brummett ex rel. L.R. v. Astrue*, No. 5:10-CV-384, 2012 WL 432099, at *6-7 (N.D.N.Y Feb. 10, 2012) (evaluating credibility of claimant's mother).  The

determination must be sufficiently specific to make "clear" the weight afforded to the testimony and the reasons for that weight. SSR 96-7p, 61 Fed. Reg. 34483, 34484 (July 2, 1996). A strong indication of credibility of an individual's statements is their consistency, "both internally and with other information in the case record." *Hamedallah*, 2012 WL 2403518, at *17 (citing SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996)).

### 2.    Application

Plaintiff testified at both hearings, and E.J.A. testified at the supplemental hearing. (T. 36-57, 415-440). Plaintiff contends that the ALJ discounted her testimony and E.J.A.'s testimony without adequately explaining his reasons for doing so. (Pl.'s Br. at 22-23). This court disagrees. In his decision, the ALJ reviewed each witness 's testimony and concluded that after considering all of the record evidence, plaintiff's and E.J.A's statements were not entirely credible as to the intensity, persistence and limiting effects of his symptoms. (T. 386-87). With regard to E.J.A.'s testimony, the ALJ compared claimant's discussion of his difficulties in school and at home with the medical evidence and his school records, and determined that claimant's impairments did not rise to a marked level, with the exception of the domain of acquiring and using information. (T. 386-392).

As to plaintiff, the ALJ pointed to inconsistencies in plaintiff's testimony with the record evidence, particularly the medical and teacher evaluations that the ALJ considered most reliable, on several points: the effectiveness of E.J.A.'s medication;

E.J.A.'s school performance; E.J.A.'s ability to dress and care for himself at an age appropriate level; and the impacts of E.J.A.'s speech impairment. (T. 390-92). *See, e.g., Lanzo ex rel. J.I.C. v. Astrue*, 10-CV-271S, 2012 WL 838921, at *6 (W.D.N.Y. Mar. 12, 2012) (upholding ALJ's finding that mother's testimony lacked credibility when inconsistent with the clinical evidence in the record). An ALJ's assessment of a parent's credibility may be brief so long as, in the context of the case, it is sufficient. *Lanzo*, 2012 WL 838921 at *6. In this case, the ALJ appropriately compared the hearing testimony to the clinical evidence in the record and concluded that, to the extent that the it conflicted with the medical evidence, the testimony was not credible. Therefore, this court finds that the ALJ's credibility assessment was supported by substantial evidence.

## C. Structured & Supportive Setting

### 1. Legal Standard

"[T]he Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting."). *See, e.g.,Smith v. Massanari*, 00-CV-0402C, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002)*; Hudson v. Astrue*, 2009 WL 1212114, at *10-11; 20 C.F.R. § 416.924a(b)(5)(iv). While the ALJ must consider these factors, "[t]he regulation does not command the ALJ to explicitly discuss his consideration."

*Shatraw v. Astrue*, No. 7:11-CV-13 (GLS), 2012 WL 589667, at *4 (N.D.N.Y. February 12, 2012) (quoting *Watson v. Astrue*, No. 07-CV-6417T, 2008 WL 3200240, at *5 (W.D.N.Y. August 5, 2008)).

## 2.    Application

Plaintiff contends that the ALJ's functional domain analysis is generally flawed because the ALJ failed to adequately consider E.J.A's ability to function outside the structured setting of his special education classroom and the other education accommodations provided by his IEP. (Pl.'s Br. at 24-25). In particular, plaintiff points to the statement of E.J.A.'s eighth grade teacher, who wrote that if E.J.A. were in regular classes, "he would need a high degree of support to be remotely successful." (T. 578-79).

The decision demonstrates that the ALJ properly considered whether E.J.A. could function outside of the supportive special education environment. Addressing the eighth grade evaluation, the ALJ noted that the same teacher reported that E.J.A. had minimal problems in his special education class, and "sometimes not at all." (T. 394, 578-79). The ALJ also took into consideration E.J.A.'s most recent report card, that showed "generally good grades" in classes outside of the modified school setting, including technology, art, music, health, and physical education. (T. 394, 562-75). The ALJ also conducted a broad review of E.J.A.'s ability to function in a variety of structured and non-structured settings: in special education and non-modified classrooms; at his mother's and stepfather's home, at his grandparents' home, as part

of the school wrestling team; in his neighborhood; and at medical evaluations. (T. 394-403). Therefore, the ALJ satisfied his obligation under the regulations to consider E.J.A.'s functioning outside of his supportive education setting.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     November 23, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge